IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER S. WEAVER,
    Petitioner,

vs.                                      Case No. 3:08cv217/MCR/EMT

EDWIN G. BUSS,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 14). Petitioner filed a reply (Doc. 18).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

    The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 14, Exhibits).[1] Additional facts relevant to this habeas action are gleaned from the public docket of this Court and the state court in which Petitioner was convicted and sentenced. *See* Fed. R. Evid. 201; *see also, e.g.*, R.E. Loans, LLC v. Eagle Group Brokers, LLC, No. 3:08cv76/MCR/MD, 2009 WL 837662, at *4 n.5 (N.D. Fla. Mar. 30, 2009) (unpublished)

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 14).

(district court may take judicial notice of state court's docket); Fernandez-Morales v. Barron, No. 5:06cv1/MCR/EMT, 2006 WL 680819, at *2 (N.D. Fla. Mar. 13, 2006) (unpublished) (district court took judicial notice of public docket of case in other federal judicial district).

On September 30, 2005, Petitioner was arrested by local law enforcement officers in Escambia County, Florida, for violating probation in nine felony cases (hereinafter referred to, collectively, as the "VOP Cases").[2] Additionally, on or after September 30, 2005, Petitioner was charged with escape in Case No. 2005 CF 005406 (hereinafter, the "Escape Case"), and four other new felonies in Case Nos. 2005 CF 005470–5473 (hereinafter referred to, collectively, as the "New Felony Cases").[3]

On October 20, 2005, while in state custody, Petitioner was produced pursuant to a writ of habeas corpus ad prosequendum for an initial appearance in this Court on a charge of possession of a firearm by a convicted felon in United States v. Weaver, Case No. 3:05cr71/MCR. Petitioner entered a guilty plea on November 3, 2005, and on March 17, 2006, he was sentenced as follows:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **180 MONTHS to begin immediately**.

(see Docket, Case No. 3:05cr71/MCR). This Court remanded Petitioner to the custody of the United States Marshals Service (see Case No. 3:05cr71 (Doc. 26)).

On May 15, 2006, Petitioner appeared in state court in the Escape Case and was adjudicated guilty, pursuant to a plea of nolo contendere (Ex. C at 45–51). He was sentenced to 67.9 months of incarceration, with pre-sentence credit for 227 days (id.). The state court ordered him committed to the custody of the Florida Department of Corrections ("FDOC") (id.).

---

[2] The VOP Case numbers are: 2002 CF 003622, 2002 CF 004010, 2003 CF 001129, and 2003 CF 002392–002397 (all of which are styled "State v. Weaver"). See http://www.escambiaclerk.com/xml/xml_web_1a.asp (search by Uniform Case Number). Following Petitioner's arrest on these cases he remained in custody without bond until they were resolved. See id.

[3] The case numbers of the New Felony Cases, all styled as "State v. Weaver," are: 2005 CF 005470 (burglary of an unoccupied structure), 2005 CF 005471 (second degree felony grand theft), 2005 CF 005472 (dealing in stolen property and pawnbroker transaction fraud), and 2005 CF 005473 (burglary of a dwelling, dealing in stolen property, and pawnbroker transaction fraud) (see http://www.escambiaclerk.com/xml/xml_web_1a.asp (search by Uniform Case Number)).

On June 2, 2006, Petitioner entered pleas, pursuant to a written Plea Entry and Sentence Recommendation Agreement ("Plea Agreement"), to the VOP Cases and the New Felony Cases (Ex. A). As to the VOP Cases, he was sentenced, in accordance with the Plea Agreement, to concurrent terms of 96 months in state prison, to run consecutively to his federal sentence and consecutively to his sentence in the Escape Case (Exs. A, B, C at 30–44). As to the New Felony Cases, he was sentenced, in accordance with the Plea Agreement, to concurrent terms of 157.3 months in state prison, to run concurrently with his sentences in the VOP Cases and the Escape Case (*id.*).[4,5] The state court ordered Petitioner committed to the custody of the FDOC (*id.*). Petitioner did not file a direct appeal (*see* Doc. 1 at 2; Doc. 14 at 3).

On August 21, 2006, Petitioner filed a motion for clarification of sentence, pursuant to Rule 3.700(a) of the Florida Rules of Criminal Procedure (Ex. D). On September 8, 2006, he filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. E). On January 4, 2007, the state circuit court dismissed both motions without prejudice (Ex. F). Petitioner did not appeal the court's decision.

January 16, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. G). In an order rendered May 7, 2007, the trial court granted the motion only to the extent that the error in the written judgment (noted *supra* in note 4) was corrected (Ex. H). Petitioner appealed the decision to the First DCA (Ex. J). On March 13, 2008, the First DCA affirmed per curiam without written opinion, with the mandate issuing April 8, 2008 (*see* Doc. 14 at 7, Ex. L). Weaver v. State, 977 So. 2d 585 (Fla. 1st DCA 2008) (Table).

---

[4] The written Judgment erroneously stated that the sentences in the New Felony Cases were to run consecutively to the sentence in the Escape Case and Petitioner's federal sentence (*see* Ex. C at 44). The error was subsequently corrected in a corrected Judgment (*see* Ex. I at 143–44). The court notes that the corrected Judgment also clarified that only the VOP sentence in Case No. 2002 CF 003362 (the shortest VOP sentence) was to run consecutively to Petitioner's federal sentence and his sentence in the Escape Case (*see id.* at 138), and the other VOP sentences were to run concurrently with Petitioner's sentence in the Escape Case (*see id.* at 141–42).

[5] The court awarded Petitioner pre-sentence credit for time served in the following amounts: 439 days in Case No. 2002 CF 003622, 401 days in Case No. 2003 CF 001129, 332 days in Case Nos. 2003 CF 002392–97, and 246 days in Case Nos. 2005 CF 005470–73 (*see* Ex. B at 128, Ex. C at 40–43).

Petitioner filed the instant § 2254 petition on May 21, 2008 (Doc. 1 at 7).[6] He does not challenge his plea to the VOP and New Felony Cases on the ground that it was unknowing or involuntary; rather, he asserts the State breached the Plea Agreement and denied him the benefit thereof by maintaining him in state custody instead of delivering him to federal authorities to serve his federal sentence first (*see id.* at 1–12; *see also* Doc. 18 at 1–3). He seeks enforcement of the Plea Agreement via an order vacating his state sentences and placing him in the custody of federal authorities to serve his federal sentence (Doc. 1 at 7; Doc. 18 at 3).

II.  STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[7] The appropriate test was described by Justice O'Connor as follows:

---

[6] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[7] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No: 3:08cv217/MCR/EMT

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring). The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim." Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1237 (11th Cir. 2011); *see* Knowles v. Mirzayance, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. Dicta in opinions is not controlling. Thaler v. Haynes, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313, 1315 (11th Cir. 2010). A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point. Bowles, 608 F.3d at 1316 (citing Renico v. Lett, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. To be entitled to deference, the state court decision need not cite to Supreme Court case law. As the Supreme Court clarified: "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of

the petitioner's claim.  *See* Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  Knowles, 129 S. Ct. at 1419.  Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See* Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing

Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the Supreme Court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications. Cave v. Sec'y for Dep't of Corr., — F.3d —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011). However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in

the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti, 551 U.S. at 953. The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.

Within this framework, the court will review Petitioner's claims.

III.  PETITIONER'S CLAIMS

Ground One:  "Oral Pronouncement of Sentence."

Ground Two:  "Due Process and Equal Protection, U.S.C.A. Amendment 14."

In Ground One, Petitioner asserts that a specific term of the Plea Agreement was that he would serve his federal sentence first, which was imposed by this Court prior to his state sentences and ordered to commence immediately (Doc. 1 at 5, 9–11). He contends the State's failure to return him to federal custody after he was sentenced on his state convictions constituted a breach of the Plea Agreement (*id.*). In Ground Two, Petitioner contends his state sentences violate his due process and equal protection rights guaranteed by the Fourteenth Amendment, because the state court lacked jurisdiction to "toll or postpone" his federal sentence, which this Court ordered to commence immediately (*id.* at 5). As relief, Petitioner seeks only enforcement of the Plea Agreement (*see* Doc. 1 at 7; Doc. 18 at 3); he does not seek to withdraw his plea.

Respondent concedes that Petitioner exhausted his claims by presenting them in his Rule 3.850 motion and appealing the state circuit court's denial of his motion (Doc. 14 at 18). Respondent contends Petitioner is not entitled to federal habeas relief for two reasons. First, although Petitioner titled Ground Two as "Due Process and Equal Protection," he asserts no specific due process or equal protection violation; rather, he asserts only that he is entitled to enforcement of the sentence he bargained for, to wit, service of his federal sentence prior to service of his state

sentences (*id.* at 18–25). Respondent contends Petitioner has not alleged that he was induced to enter his plea by a promise that he would serve his federal sentence prior to his state sentences, or that he would not have entered a plea but for such a promise (*id.* at 25). Additionally, Petitioner does not allege he is being required to serve more prison time than he bargained for (*id.*). Therefore, he has failed to present a federally cognizable claim (*id.*). Respondent's second argument is that even assuming that Petitioner presented a cognizable claim, he has failed to show that the state court's adjudication of the claims was contrary to or an unreasonable application of Supreme Court law, or based upon an unreasonable determination of the facts (*id.* at 25–26).

       1.      Clearly Established Federal Law

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971).

       2.      Federal Review of State Court Decision

In the state circuit court's written opinion denying Petitioner's Rule 3.850 motion, the court found as fact that although Petitioner may have anticipated that he would serve his federal sentence first, neither the written plea agreement nor the plea colloquy reflected that service of his federal sentence first was a negotiated condition of the plea agreement (Ex. H at 77). The court further found that Petitioner did not suggest that he wished to withdraw his pleas or that he would not have entered the pleas had he known that the state sentences would be served first; rather, he sought modification of his sentences to either sentences of time served or suspended sentences, which was the relief granted in Davis v. State, 852 So. 2d 355 (Fla. 5th DCA 2003) (*id.*). The court noted, however, that Petitioner's reliance on Davis was misplaced, because in Davis the federal and state sentences were ordered to be served concurrently, not consecutively as in Petitioner's case, and therefore the relief afforded in Davis was not appropriate (*id.*). Additionally, the court found as fact that Petitioner's total sentence was not longer than that which was contemplated at the time of his plea agreement (*id.*). Based upon these findings, the court concluded that while Petitioner's federal and state sentences may not have been sequenced in the order contemplated, his sentences were not illegal (*id.*). The court also noted that it lacked authority to direct that Petitioner be transferred to

serve his federal sentence before serving his state sentences (*id.*, n.6 (quoting <u>Davis</u>, 852 So. at 357)).

The state circuit court's decision was affirmed by the First DCA. While the affirmance was a per curiam opinion without reasoning, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment of the lower court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" <u>Sweet v. Sec'y Dept. of Corrs.</u>, 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); *see also* <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

The undersigned will first determine whether Petitioner has established by clear and convincing evidence that the state circuit court's decision was based upon an unreasonable determination of the facts. As previously noted, the state court found as fact that neither the written plea agreement nor the plea colloquy reflected that service of Petitioner's federal sentence <u>first</u> was a negotiated condition of the Plea Agreement.

In Petitioner's verified Rule 3.850 motion, he stated that he advised the prosecutor, defense counsel, and state court of his previously imposed federal sentence and provided copies of the federal Judgment (*see* Ex. G at 2). Petitioner also submitted a copy of his written Plea Agreement (Ex. G, Attachment 1). That document is titled "Sentence Recommendation," and it states in relevant part:

> **1.    THE FOLLOWING REFLECTS ALL TERMS OF THE SENTENCE RECOMMENDATION:**
> . . . .
> DEFENDANT PLEADS:  __x___ GUILTY  ___ NOLO CONTENDERE  ___X___ AS CHARGED
> or to the following:
>
> **Additional Terms of Plea Entry and Sentence Recommendation Agreed Upon by the State and Defendant:**
>
> <u>FOLLOWING SENTENCE IS CONSECUTIVE TO ANY FEDERAL TIME DEFENDANT IS SENTENCED TO AND IS CONSECUTIVE TO STATE PRISON TIME SENTENCED TO ON ESCAPE CHARGE IN CASE 1705CF005406</u>
>
> VOP CASES
> A/G; 96 MONTHS STATE PRISON; REDUCE ALL FINES/CC; COST OF SUPERVISION TO A LIEN

Case No: 3:08cv217/MCR/EMT

NEW LAW CASES:
A/G; 157.3 MONTHS STATE PRISON; REDUCE FINES/CC TO A LIEN; COURT RETAINS JURISDICTION OVER RESTITUTION; STATE TO FILE NOTICE OF RESTITUTION AMOUNT IN 90 DAYS; CONCURRENT W/VOP CASES AND CONCURRENT WITH ESCAPE CASE 1705CF005406

(Ex. G, Attachment 1).

The transcript of the plea colloquy shows that the issue of concurrent versus consecutive sentences was discussed throughout the plea proceeding, and mention was made of the sequence in which Petitioner would serve his state and federal sentences:

> THE COURT: Okay. Now this document tells me that you wish to enter a plea of guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And it tells me that as you enter a plea of guilty to these charges, you admit the commission of the violation of probation and these new law violations; that it's done so on the condition that this Court impose a sentence that is recommended by you and your lawyer and the State Attorney after you've negotiated this.
>
> That sentence specifically is on the VOP cases, an adjudication of guilt, revoke probation, 96 months state prison, reduce all fines and costs to a judgment becoming a lien.
>
> Cost of supervision also reduced to a judgment becoming a lien. No probation, no house arrest, no anything following that, just 96 months state prison, each case, each count to run concurrent.
>
> Is that your understanding?
>
> THE DEFENDANT: Yes, sir, it is.
>
> THE COURT: Okay. And clearly you would then be entitled to credit for time served and we would have to calculate those. We want to try to get that correct to the extent that we can.
>
> If there was any credit for time out of state that you were served [sic] after the warrant was executed and before you were transported to Florida then as you heard me mention a while ago, I would reserve jurisdiction to give that credit and if we could get some kind of paperwork to establish what that time was, then I would be happy to give it to you.

   MR. MCGUIRE [defense counsel]:  Your Honor, to interject here to clarify everything.  This eight years [i.e., the 96-month sentence on the VOP Cases] in the agreement says it is to be after the federal sentencing [sic] and after his 60 some months under the escape charge and I'm clarifying that now so the record is clear because later on there's another one that will be run concurrent to the escape charge.

   THE COURT:  Okay.  And I'm going to go over all of those little nuances here in just a minute.  We don't want to leave this until you and I are clear on it and I make sure this is, in fact, what you want to do.

   Do you understand?

   THE DEFENDANT:  Yes, sir.

   THE COURT:  So just bear with me and we're going to take our time and get it done.

   As to the new law cases, the ones that I talked about, the new '05 charges, it says that as to those you're pleading guilty, you're admitting the commission of the crimes and that the recommendation is I adjudicate you guilty and I impose a sentence of 157.3 months state prison; that I would reduce the fines and costs to a lien; that I would reserve jurisdiction, reserve the authority, the judicial authority over restitution.  That is, to decide how much restitution, who it's to, what the payments are to be.

. . . .

   Do you understand?

   THE DEFENDANT:  Yes, sir, I do.

   THE COURT:  It goes on to say that as to, as Mr. McGuire was talking about, the sentence on the VOP cases is consecutive to any federal time the defendant is sentenced on and is consecutive to the state prison time on the escape charge in Case 05-5406.

   Do you understand that?  That's just the VOP, 96 month sentence, that's all I'm talking about right now.

   THE DEFENDANT:  I understand.

   THE COURT:  Okay. On the new law cases it says that this sentence on the new law cases is concurrent with the sentence on the VOP cases and concurrent with

the escape case in [2005 CF 005406]. So since you have been sentenced on the escape charge already, this 157.3 months is going to start now as I understand it.

I need to clarify this because there's a little bit of confusion in my mind and I want to make sure that we get it on the table and we can answer that confusion. But the way this speaks to me is it says that if you are doing state time right now on the escape charge, that this sentence for the 157.3 will start running now and it will run concurrent with that and then when that escape charge sentence ends, then the VOP sentence, the 96 months will start and it's going to run concurrent with that as well.

That's what I read this as saying. I need to find out how the federal sentence fits in with what I just described.

MR. MCGUIRE: Your Honor, we suspect that the federal sentence will start and that he will finish the 15 years in federal prison and then —

THE COURT: Before the escape sentence begins?

MR. MCGUIRE: Correct, and then he's going to have six years for the escape and then eight years for the VOP.

THE COURT: Okay. And the 157.3 would be running concurrently with those two sentences as soon as they begin?

MR. MCGUIRE: Correct.

THE COURT: And it's anticipated they will begin after the federal sentence is concluded?

MR. MCGUIRE: Yes, sir.

THE COURT: Okay. Mr. Weaver, is that your understanding?

THE DEFENDANT: Yes, it is.

(*id.* at 117–23).

To determine whether the government has breached a plea agreement, the court must first determine the scope of the government's promises. United States v. Copeland, 381 F.3d 1101, 1104, 1105 (11th Cir. 2004). "In determining the meaning of any disputed terms in an agreement, the court must apply an objective standard and must decide whether the government's actions are

inconsistent with what the defendant reasonably understood when he entered his guilty plea." *Id.* (internal quotation marks omitted).

In the instant case, although Petitioner states he notified defense counsel, the State, and the court of his previously-imposed federal sentence and provided copies of the judgment, this does not undermine the state court's factual findings or establish that Petitioner obtained a promise from the State that he would serve his federal sentence first or that he would serve his federal sentence in a federal institution.[8]

With regard to the Plea Agreement, although it specified that the VOP sentence would be consecutive to Petitioner's federal sentence, the Plea Agreement did not specify the <u>sequence</u> in which Petitioner's state and federal sentences would be served or designate the institution in which any sentence would be served. To the extent Petitioner contends the meaning of the word "consecutive," as used in the Plea Agreement, is in dispute, the undersigned concludes that the State took no action inconsistent with what Petitioner <u>reasonably understood</u>—that is, one sentence would follow another. Although Petitioner may have <u>anticipated</u> that he would serve his federal sentence first (as discussed more fully *infra*), the State did not include this condition in the negotiated Plea Agreement and took no action inconsistent with the terms of the Plea Agreement. As for the plea colloquy, a review of the transcript reveals that the <u>State</u> made no promise during Petitioner's plea colloquy regarding the sequence in which Petitioner would serve his sentences. Thus, the state court's finding—that service of Petitioner's federal sentence first was not a negotiated condition of the Plea Agreement—was not unreasonable.

The undersigned next considers comments made by the court and defense counsel during Petitioner's plea colloquy. As detailed *supra*, the court began the plea proceedings by explaining the charges to which Petitioner was pleading and the sentences he would receive. The court first addressed the VOP Cases and confirmed with Petitioner that he understood he would receive 96 months on those cases, "each count to run concurrent" (Ex. B at 117). The court then discussed with Petitioner the issue of credit for time served on the VOP Cases, during which defense counsel

---

[8] As this court is well aware, the Bureau of Prisons ("BOP") may designate a state institution for service of a federal sentence. *See* 28 C.F.R. § 0.96(c), 18 U.S.C. § 3621(b); *see also, e.g.*, <u>Barden v. Keohane</u>, 921 F.2d 476 (3d Cir. 1990).

"interjected," stating as follows: "Your Honor, to interject here to clarify everything. This eight years [i.e., the 96-month sentence on the VOP Cases] in the agreement says it is to be <u>after</u> the federal sentencing [sic] and <u>after</u> his 60 some months under the escape charge and I'm clarifying that now so the record is clear because later on there's another one that will be run <u>concurrent</u> to the escape charge." (*id.* at 118) (emphasis added). Although counsel used the term "after," it is evident that he used the term to describe the <u>consecutive</u> nature of 96-month sentence on the VOP Cases, since he compared that sentence to another sentence that would be a <u>concurrent</u> sentence. Moreover, shortly after counsel's comment, the court clarified with Petitioner that he understood the consecutive nature of the VOP sentence (*see id.* at 120). Thus, when read in context, it is clear that defense counsel was merely emphasizing that some sentences would run concurrently and some would run consecutively.

The court continued the plea colloquy by confirming with Petitioner that he understood he would receive 157.3 months on the New Felony Cases, concurrent with the sentences on the VOP and Escape Cases (Ex. B at 118–20). And finally, the court confirmed with Petitioner that he understood that the 96-month sentence on the VOP Cases would run consecutively to the federal and Escape Case sentences (*id.* at 120). Although the court went on to discuss "how the federal sentence fits in with" the state sentences, defense counsel explained to the court that he and Petitioner "<u>suspect</u> the federal sentence will start" before the escape sentence begins (*id.* at 121) (emphasis added). Similarly, the court separately confirmed with defense counsel and Petitioner that they "<u>anticipated</u> [that Petitioner's state sentence] will begin after the federal sentence is concluded" (*id.*) (emphasis added). Defense counsel's use of the term "suspect," and the court's use of the term "anticipate[]," demonstrate that service of Petitioner's federal sentence first was not assured, and that Petitioner so understood.

Furthermore, immediately after discussing how the federal sentence would "fit in," Petitioner advised the court that he had a question (*id.* at 121). Petitioner then stated: "The VOPs and the new law violations are running concurrent but yet one is consecutive to the escape. I don't understand that. I don't understand how it's possible." (*id.* at 121–22). The court then explained to Petitioner the interplay among the <u>state</u> sentences and asked Petitioner whether he understood (*see id.* at 122–23). Petitioner stated he understood, and he had no further questions of the court (*id.* at 123).

Case No: 3:08cv217/MCR/EMT

Petitioner did not inquire about, nor did the court further discuss, the sequence in which Petitioner's state and federal sentences would be served. Thus, to the extent Petitioner contends he was assured during the plea colloquy that he would serve his federal sentence first, his contention is refuted by the record. Petitioner has therefore failed to establish by clear and convincing evidence that the state circuit court's decision was based upon an unreasonable determination of the facts.

Moreover, the the record supports the state court's additional finding that Petitioner did not suggest he wished to withdraw his pleas, or that he would not have entered the pleas had he known that his state sentences would be served first (*see* Ex. G at 7 ("Relief Sought" section of Petitioner's Rule 3.850 motion, wherein Petitioner does not seek to withdraw his plea, but rather, seeks relief in the form of a suspended or modified sentence of "time served")). As the state court found, Petitioner was not entitled to the relief he sought—that is, the same relief afforded in Davis, 852 So. 2d at 355—because Petitioner did not bargain for, and was not sentenced to, concurrent state and federal sentences. Likewise, Petitioner has offered no evidence to rebut the state court's finding that his total sentence was not longer than that which was contemplated by the terms of his Plea Agreement, and the record refutes any such suggestion. Petitioner has therefore failed to demonstrate that the state court's adjudication of his federal claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law.[9]

Finally, Petitioner cannot establish a constitutional violation based upon his argument that the state court lacked jurisdiction to "toll or postpone" his federal sentence (an argument he appears to assert independently of his claim that the State violated the Plea Agreement). Initially, the state court did not order the postponement or tolling of Petitioner's federal sentence. Moreover, the BOP's sentence calculation (*see* note 9, *supra*) demonstrates that Petitioner's federal sentence was not postponed but instead commenced upon its imposition, prior to imposition of his state sentences.

---

[9] While this federal habeas action was pending, Petitioner received a federal sentence computation from the federal Bureau of Prisons stating that his federal sentence commenced on March 17, 2006 (the date it was imposed), and designating the Florida Department of Corrections as the institution for service of his federal sentence (Doc. 24). Although this information was not available to the state courts at the time Petitioner's Rule 3.850 motion was considered, it establishes that Petitioner's federal sentence effectively commenced before Petitioner was sentenced on the Escape, VOP, and New Felony Cases. Thus, even if this court determined that service of Petitioner's federal sentence first was a term of the Plea Agreement, Petitioner has failed to show that this term was not fulfilled.

Therefore, Petitioner has failed to show that the State of Florida lacked jurisdiction to impose sentence and place him in state custody. Similarly, to the extent Petitioner contends the State breached the Plea Agreement by failing to return him to federal custody after he was sentenced in state court, the contention is without merit; the State had primary jurisdiction over Petitioner, and the BOP acted properly in designating a state facility for service of Petitioner's federal sentence.[10]

For the aforementioned reasons, Petitioner has failed to show that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). Therefore, he is not entitled to federal habeas relief.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

---

[10] The issue of whether an inmate is incarcerated first for his state conviction or for his federal conviction is a matter of comity between the state and federal governments and not a personal right of the inmate. *See* Floyd v. Henderson, 456 F.2d 1117, 1119 (5th Cir. 1972); *see also* United States v. Collins, 123 Fed. Appx. 628, 629, 2005 WL 673484, at **1 (5th Cir. 2005); United States v. Booker, No. 1:03cr28/MMP, 2006 WL 287860, at *1 (N.D. Fla. Feb. 6, 2006) (unpublished). As explained in Booker, as a general rule, the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration. 2006 WL 287860 at *1 n.2 (citing Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991)). The jurisdiction of the first sovereign continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence. *Id.* (citing United States v. Warren, 610 F.2d 680, 684–85 (9th Cir. 1980)). When a prisoner is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation. *Id.* at *1 (citing Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992); Hernandez v. United States Attorney General, 689 F.2d 915, 918–19 (10th Cir. 1982); Roche v. Sizer, 675 F.2d 507, 509–10 (2d Cir. 1982); Brewer, 923 F.2d at 1366–67). This rule derives from the fact that the federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities. *Id.* (citing Thomas, 962 F.2d at 361 n.3; Crawford v. Jackson, 589 F.2d 693, 695 (D.C. Cir. 1978)). Principles of comity require that when the writ is satisfied, the second sovereign returns the prisoner to the first sovereign. *Id.*

In the instant case, Petitioner was first arrested by Escambia County officials on September 30, 2005, and detained at the Escambia County Jail until he was loaned to federal authorities on October 20, 2005; therefore, the State of Florida had priority of jurisdiction over him. This jurisdiction continues until state authorities relinquish him upon expiration of his state sentences.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of June 2011.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  See **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**